IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Rickey B. Jones, | ) | Civil Action No. 8:10-cv-02013-TLW -JDA |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

On May, 15, 2008, Plaintiff protectively filed Title II and Title XVI applications for DIB and SSI, respectively, alleging an onset of disability date of October 1, 2003. [R. 9.] The claims were denied initially on June 30, 2008 [R. 52–55] and were denied on reconsideration by the Social Security Administration ("the Administration") on November 18, 2008 [R. 56–59]. On January 20, 2009, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 72], and on November 30, 2009, ALJ Alice Jordan conducted a de novo hearing on Plaintiff's claims [R. 16–51].

The ALJ issued a decision on January 27, 2010, finding Plaintiff not disabled under §§ 216(i) and 223(d) of the Social Security Act. [R. 9–15.] The ALJ found Plaintiff had the following severe impairments: degenerative disc disease, diabetes mellitus, and peripheral neuropathy. [R. 11, Finding 3.] The ALJ also found Plaintiff reported chronic back and neck pain, uncontrolled diabetes that caused in vision impairments, and burning pain in his bottom left foot and at times experiences numbness in his hand. [*Id.*] As a result, the ALJ concluded "[i]t is established claimant has a 'severe' combination of physical impairments that more than minimally interferes with his ability to work." [*Id.*] Considering the severity of his impairments, however, the ALJ found Plaintiff's impairments or combination of impairments did not meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 12, Finding 4.] The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of medium work. [R. 12, Finding 5.] Specifically, the ALJ found Plaintiff had the ability to lift 50 pounds occasionally and 25 pounds frequently; had the ability to balance, stoop, kneel, crouch, or

crawl; but could not climb ladders, ropes, or scaffolds. [*Id.*] The ALJ further limited Plaintiff's RFC by requiring him to avoid concentrated exposure to cold, humidity, noise, and hazards. [*Id.*] The ALJ also found Plaintiff was capable of performing past relevant work as a janitor and screen printer supervisor [R. 14, Finding 6] and other jobs existed in the national economy Plaintiff could perform [*id.*].

Plaintiff requested Appeals Council review of the ALJ's decision [R. 4] but the Council declined review [R. 1–3]. Plaintiff filed this action for judicial review on August 2, 2010. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the final administrative determination of the Commissioner should be reversed and Plaintiff awarded disability insurance benefits because the ALJ erred by:

1.    misapplying the grid regulations [Doc. 12 at 6–7];

2.    failing to assess Plaintiff's chronic pain in accordance with the standard required in the Fourth Circuit [*id.* at 7–9]; and

3.    committing reversible error by assigning "great weight" to the opinion of a non-examining agency consultant and relying on this evidence as a basis to deny the claim [*id.* at 9–13].

Plaintiff further contends the ALJ's decision that Plaintiff was not disabled because he could perform medium level work is not supported by substantial evidence. [*Id.* at 13–14.]

The Commissioner contends the final decision is supported by substantial evidence, specifically arguing:

1.    the ALJ properly evaluated Plaintiff's RFC [Doc. 14 at 11–15];

2. the ALJ properly considered Plaintiff's subjective complaints of pain and found they were not credible [*id.* at 15–18]; and

3. the ALJ properly determined Plaintiff could perform his past relevant work and, alternatively, could perform other work existing in the national economy [*id.* at 18–20].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th

Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court

must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g., Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of*

*Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.   *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.   *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of

impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.** ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.** ***Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind

---

[4]Residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20 C.F.R. §§ 404.1545(e), 416.945(a)(1).

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a; 416.969a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id.*

[Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II. Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)).  If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.   20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig*, 76 F.3d at 590.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the

treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d). In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(e), 416.927(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make

a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V. Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably

be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**RFC Analysis**

Plaintiff argues the ALJ's conclusion Plaintiff could perform medium work with some limitations is not supported by substantial evidence.  The Court concludes the ALJ's RFC

assessment is not supported by substantial evidence because it is mired with inconsistencies and unexplained conclusions.

The Administration has provided a definition of residual functional capacity ("RFC") and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

SSR 96-8p, 61 Fed. Reg. 34,474-01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. *See id.*. Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.* In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of a claimant's impairments, including those that are not severe. *Id.* at 34,477. While a non-severe impairment standing alone may not significantly limit a claimant's ability to do basic work activities, it may be crucial to the outcome of a claim when considered in combination with limitations or restrictions due to other impairments. *Id.* If the ALJ finds a combination of impairments to be severe, "the combined impact of

18

the impairments shall be considered throughout the disability determination process." 42

U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). Additionally, the Administration has determined

that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC . . . .

SSR 96-8p, 61 Fed. Reg. at 34,476.

To assess a claimant's RFC, the ALJ must consider all relevant evidence in the

record, including medical history, medical signs, laboratory findings, lay evidence, and

medical source statements. *Id.* at 34,477. SSR 96-8p specifically states, "The RFC

assessment must always consider and address medical source opinions. If the RFC

assessment conflicts with an opinion from a medical source, the adjudicator must explain

why the opinion was not adopted." *Id.* at 34,478.

The ALJ evaluated Plaintiff's RFC as follows:

> The undersigned finds claimant has the ability to lift 50 pounds occasionally and 25 pounds frequently. Claimant has the ability to frequently balance, stoop, kneel, crouch, or crawl. However, he cannot climb ladders, ropes, or scaffolds. Claimant should avoid concentrated exposure to cold, humidity, noise and hazards.

[R. 12.] The ALJ supported this finding based on the opinion evidence. [R. 12.]

Specifically, the ALJ noted CT scans showing multilevel degenerative disc disease at L5-

19

S1; Plaintiff had complaints of chronic back pain due to degenerative disc disease but that physicians noted normal range of motion in his upper and lower extremity; and there were no signs of cyanosis, clubbing, or edema. [*Id.*] Further, the ALJ noted Plaintiff received conservative treatment and prescription medicines. [*Id.*] The ALJ found Plaintiff's diabetes was medically controlled, his exams did not show any significant physical limitations related to sensory problems, and his feet were free of ulcerations or trauma. [*Id.*]

The ALJ further relied on the opinions of two state agency reviewers, one of which found Plaintiff's diabetes and peripheral neuropathy were nonsevere, noting the lack of medical records since the date last insured. [*Id.*] The ALJ gave great weight to the state agency opinions and concluded the "medical record . . . indicate[d] that [Plaintiff] experiences pain; however, that pain does not rise to the level of total disability." [*Id.* at 13.]

The Court concludes the ALJ's RFC assessment is not supported by substantial evidence for four reasons. First, the ALJ relies heavily on and gives great weight to the opinion of a state agency reviewer who found Plaintiff's diabetes and peripheral neuropathy to be nonsevere and evaluated Plaintiff's RFC in light of these impairments being nonsevere [R. 12]; this reviewer's findings, however, directly contradict the ALJ's own finding that these same impairments were severe impairments [R. 11, Finding 3]. The ALJ found Plaintiff not only had severe impairments of degenerative disc disease, diabetes mellitus, and peripheral neuropathy, but also "ha[d] a 'severe' combination of physical impairments that more than minimally interferes with his ability to work." [R. 11.] The ALJ failed to explain how these findings of impairment, severe singularly and in combination, comport with the agency reviewer's contrary finding and resulting RFC. How this agency

reviewer's RFC assessment could be given great weight in light of its conflict with the ALJ's findings is unexplained and without sufficient basis in the record.

Second, the ALJ noted Plaintiff was noncompliant in that he had a long history of not taking his diabetes medication and that the medical evidence showed conservative treatment with prescription medications. [R. 12–13.] Further, the ALJ referenced the state agency reviewer's note that "no medical records [were] provided which show claimant received treatment from the alleged onset date to the date last insured." [R. 12.] The ALJ, however, failed to address in any fashion the fact that Plaintiff is homeless [R. 250], is without health insurance [R. 23], relies on others for transportation [R. 29 ], lives off food stamps and the generosity of churches and soup kitchens [R. 22, 30], and, therefore, may not have money to purchase medications. While the record evidence demonstrates Plaintiff's health care has been provided mostly through local free medical clinics, New Horizon, and emergency rooms, the ALJ never addressed with Plaintiff, Plaintiff's counsel, or any other person the extent of the services available through these clinics, including the availability of free prescriptions. The ALJ provided the Court with no evidence of how or if she took Plaintiff's ability to afford care into consideration in evaluating the medical evidence before her. It is well-established that "poverty excuses noncompliance." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (noting every circuit that has considered the issue has come to this conclusion and citing cases); *see also Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) ("[I]t is as erroneous to consider the claimant's failure to seek treatment as a factor in the determination that her impairment is not severe as it would be to reach the ultimate conclusion that the claimant is not disabled because she failed to follow prescribed treatment when that failure is justified by lack of funds."). It is

the Commissioner's burden to produce evidence of unjustified noncompliance. *See Preston v. Heckler*, 769 F.2d 988, 990 & n.* (4th Cir. 1985); *Dawkins*, 848 F.2d at 1214 n.8. On remand, if noncompliance is to be a factor used in denying benefits, the ALJ must point to substantial evidence that Plaintiff's impairment is reasonably remediable by Plaintiff, given his situation and that Plaintiff lacks good cause for failing to follow a prescribed treatment program. *See Preston*, 769 F.2d at 990–91.

Third, evidence in the record from treating physician Dr. Stephen Parks that appears to contradict the ALJ's findings. Specifically, Dr. Parks opined Plaintiff's condition permitted him to perform light physical work. [R. 340.] Yet, the ALJ never discussed this finding in explaining her conclusion that Plaintiff could perform "less than the full range of medium work." [R. 12.] The responsibility for weighing evidence falls on the Commissioner or the ALJ, not the reviewing court. *See Craig*, 76 F.3d at 589; *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 520. While the opinion of a claimant's treating physician generally is given great weight, *Coffman*, 829 F.2d at 517, the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590; *see also Coffman*, 829 F.2d at 517 (stating that a treating physician's opinion may be disregarded only if there is persuasive contradictory evidence in the record). Here, however, the ALJ failed to address how she considered Dr. Parks's opinion, if at all. On remand, the ALJ must also give specific reasons for the weight given to the treating physician's medical opinion. *See Coffman*, 829 F.2d at 517; 20 C.F.R. §§ 404.1527(d), 416.927(d).

Finally, glaringly missing from the ALJ's decision is her evaluation of Plaintiff's allegations of chronic pain and how these pain complaints factored into the RFC assessment. The ALJ is required to make credibility determinations about allegations of pain or other nonexertional disabilities, and "such decisions must refer specifically to the evidence informing the ALJ's conclusions." *Hammond,* 765 F.2d at 426. "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." SSR 96-7p, 61 Fed. Reg. at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2). If he rejects a claimant's testimony about her pain or physical condition, the ALJ must explain the basis for such rejection to ensure the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir.1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34, 486.

The ALJ noted that "the medical record [] indicate[d] that [Plaintiff] experiences pain; however, that pain does not rise to the level of total disability." [R. 13.] The ALJ then concluded that, while Plaintiff has degenerative disc disease that causes pain and limitations, the medical records do not support a finding Plaintiff cannot perform work in the light and medium exertional range. [R. 13–14.] However, the ALJ failed to list specific

reasons for finding Plaintiff's complaints of pain do not rise to the level of total disability so

that it is clear to the Court the weight the ALJ gave to Plaintiff's statements or the reason

for that weight. *See* SSR 96-7p. Therefore, the ALJ is directed to properly evaluate

Plaintiff's pain on remand.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's RFC assessment is a sufficient basis to remand

the case to the Commissioner, the Court declines to specifically address Plaintiff's

additional allegations of error by the ALJ. However, upon remand, the Commissioner

should take into consideration Plaintiff's remaining allegations of error, specifically

Plaintiff's allegation that the ALJ misapplied the grids.[6]

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the

Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g)

and that the case be REMANDED to the Commissioner for further administrative action

consistent with this recommendation.

---

[6]The Court further notes the ALJ failed to describe any specific Listing that may have been evaluated at Step 3. By way of example only, diabetes mellitus is described in Listing 9.00, and degenerative disc disease is addressed in Listing 1.04(A). The Court, however, expresses no opinion as to whether these listings must be considered or are the only listings that should be considered. The problem in this case, however, is that the Court is left to guess what criteria the ALJ evaluated in determining Plaintiff did not meet a Listing. Instead, the ALJ merely makes the conclusory statement that Plaintiff's impairments and combination of impairments (which she found to be severe in both instances) did not meet a Listing, a decision based heavily on the opinions of the state agency reviewers. [R. 12.] A listing analysis, however, includes identifying the relevant listed impairments and comparing the criteria with the evidence of the plaintiff's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (stating that "[w]ithout such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination"); *Beckman v. Apfel*, C.A. No. W M N–99–3696, 2000 WL 1916316, at *9 (D. Md. 2000) (finding that where there is "ample factual support in the record" for a particular listing, the ALJ should perform a listing analysis). The ALJ failed to provide any such analysis. Consequently, the ALJ should also provide a proper Listing analysis on remand.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 17, 2012
Greenville, South Carolina